## RUHE, *Appellant*, v. BUCK *et al.*

### Division Two, July 9, 1894.

1. **Nonresident:** REMEDIES: LEX FORI: MARRIED WOMAN. Where a nonresident creditor sues a married woman in this state, he is entitled to such remedies only as the *lex fori* affords.

2. ———: ———: ———: MARRIED WOMAN: ATTACHMENT. He can not proceed against her by attachment, for a debt contracted by her in another state prior to the revision of 1889, since, at that time, a married woman was not subject to attachment process in this state.

*Appeal from Atchison Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*Lewis & Ramsay* for appellant.

(1) The court below erred in finding for the defendant for the reason that the equitable title of defendants Julia E. and O. W. Buck in the property in controversy was subject to attachment, execution and sale. Revised

Statutes, 1889, sec. 4915; *Eddy v. Baldwin*, 23 Mo. 588. (2) The court erred in finding for defendants for the reason that the assignment of the Perkins contract to Mrs. Julia E. Buck was a fraud upon her husband's creditors, and the land was therefore liable to sale upon attachment and execution at the instance of such creditors. See above authorities; also, *Jordan v. Bush-meyer*, 97 Mo. 94; *Ryland v. Callison*, 54 Mo. 513; *Bobb v. Woodward*, 50 Mo. 95. Upon showing the insolvency of the husband and his purchase of the lot in the wife's name the burden devolved upon her to show that it was purchased in good faith with her own moneys. *Seitz v. Mitchel*, 94 U. S. 580; *Sloan v. Terry*, 78 Mo. 617; *Patton v. Brag*, 113 Mo. 595; *Crook v. Tull*, 111 Mo. 283. (3) The court erred in not finding for plaintiff, for the reason that the attachment proceedings against Oliver W. Buck and his wife, Julia E. Buck, being for a personal legal liability against both of them, there was no reason why it could not be enforced in a legal proceeding against both of them—even under the strict old common law rules such judgments might be so rendered in the cases where she was so personally liable—as in case of her antenuptial contracts or torts during coverture. *Gruen v. Bamberger*, 11 Mo. App. 261; *Walker v. Deaver*, 79 Mo. 664; *Merrill v. St. Louis*, 12 Mo. App. 473; s. c., 83 Mo. 244; *Conrad v. Howard*, 89 Mo. 219; *Smith v. Bead*, 73 Ind. 159; 14 Am. and Eng. Encyclopedia of Law, p. 637, and note 7, p. 638, and note 9, pp. 661 and 762. *Kingman v. Paulson*, 126 Ind. 502. The Dakota judgments, which were general personal liabilities of Mrs. Buck, were entitled to "full faith and credit in every other state." Art. 4, sec. 1, U. S. const; *Chew v. Brumagen*, 13 Wall. 497; *Cheever v. Wilson*, 9 Wall. 108; *Ins. Co. v. Harris*, 97 U. S. 331; *Kingman v. Paulson*, 126 Ind. 502; *Kingman v. Paulson*, 26 N. E. Rep. 373. (4) The court erred

in holding that an attachment or execution could not issue against a married woman. There is no reason why it should not be done where she is personally liable, as in this case. *Bedsworth 'v. Bowman,* 104 Mo. 44; *Walker v. Deaver,* 79 Mo. 664; *Merrill v. St. Louis,* 83 Mo. 244; sec. 6868, R. S. 1889, in proper case authorizes attachment or levy. (5) The court below erred in holding the attachment suit against Mrs. Buck void, for th ereason that the court had jurisdiction of the subject-matter, that is, of the question of her personal liability upon the Dakota judgments, conceded to be. personal liabilities against her where she lived, and having juris-diction of the subject-matter and of the person, the judgment could not be void on account of the form of the proceedings. *Babb v. Bruere,* 23 Mo. App. 604; *Gates v. Tusten,* 89 Mo. 13; *Scott v. Caruth,* 50 Mo. 120; *Clark v. Clark,* 86 Mo. 114; *Rosenheim v. Hartstock,* 90 Mo. 357. The real reason why under our practice equity was necessary to charge the separate property of a married woman, was because her contracts as such were void, and it was only her separate property that could be reached and in the very nature of things an equitable proceeding to appropriate same was necessary. *Davis v. Smith,* 75 Mo. 219. The presumption is in favor of the jurisdiction of the court. *McClanahan v. West,* 100 Mo. 399.

*Hunt & Bailey* for respondents.

(1) A married woman, under the revision of 1879, could not be sued at law, and certainly not by attach-ment, but the only remedy against her was by bill in equity. *Gage v. Gates,* 62 Mo. 412; *Williams v. Rail-road,* 8 Mo. App. 135; Drake on Attachment, [2 Ed.] secs. 247, 249; *Bachman v. Lewis,* 27 Mo. App. 81; *Gabriel v. Mullen,* 30 Mo. App. 465; *French v. Seigal,*

9 Mo. App. 467; *Brumback v. Wemstein*, 37 Mo. App. 520; *Boekhoff v. Gruner*, 47 Mo. App. 22; *State to use v. Beldsmeier*, 56 Mo. 226; *Coffee Co. v. Fritz*, 41 Mo. App. 389; *Baer v. Pfaff*, 44 Mo. App. 35; *Decker v. Lidwell*, 3 Mo. App. 586. (2) Prior to the revision of 1889, a judgment at law against a married woman is a nullity. Judgment at law void. *Werneke v. Wood*, 58 Mo. 537; *Gage v. Gates*, 62 Mo. 412; *Lincoln v. Rowe*, 64 Mo. 138. (3) The law has never authorized an attachment against a maried woman's property. *Meyers v. Van Wagner*, 56 Mo. 115; *Beal v. Morgan*, 49 Mo. 48; *Schuster v. Schuster*, 93 Mo. 438; *Turner v. Shaw*, 96 Mo. 22 and 522; *Kimball v. Silvers*, 22 Mo. App. 520; *Kimm v. Weippert*, 46 Mo. 532. (4) The wife is given the same ownership, possession and enjoyment of her property as she would have were she sole and unmarried. *Emerson v. Clayton*, 32 Ill. 493; *Wankirk v. Skillman*, 34 N. J. 114; *Blair v. Railroad*, 89 Mo. 391; *Bedsworth v. Bowman*, 104 Mo. 44. (5) The indebtedness being for cigars, not necessaries, and they nowhere allege that Julia E. Buck attempted to bind her own estate, hence it created no charge upon the separate estate of the defendant, Julia E. Buck, in the attachment suit, and the judgment was void; so, also, sheriff's deed passed no title to J. P. Lewis. *Hooton v. Ransom*, 6 Mo. App. 22; *Kimm v. Weippert*, 46 Mo. 532; *Maguire v. Maguire*, 3 Mo. App. 463; *Bedsworth v. Bowman*, 104 Mo. 44. (6) The Dakota judgments were sent here for collection, and they were simply record debts from a sister state; but appellant seeks to collect them by the unusual, unwarranted and unlawful proceedings by attachment. Story's Conflict of Laws, sec. 330; Story on Bills, sec. 160; 8 Peters, 361; 4 Metcalf, 594; *McMerty v. Morrison*, 62 Mo. 140; *Lyons v. Campbell*, 34 Mo. App. 214; *Smith v. Moore*, 53 Mo. App. 525; 12 Am. and Eng. Encyclopedia of Law, foot page 148*o*, and authorities

Ruhe v. Buck.

cited; and foot page 148*t*, and authorities cited.   (7) Wife has power to convey her property by power of attorney.   R. S. 1879, sec. 670; R. S. 1889, sec. 2397; *Melton v. Smith*, 65 Mo. 315; *Bedsworth v. Bowman*, 104 Mo. 44; *Richardson v. De Giverville*, 107 Mo. 422; *Leete v. Bank*, 115 Mo. 184; *McClure v. Herring*, 70 Mo. 18.   (8) The court has no jurisdiction over the property in the attachment suit.   *Hardin v. Lee*, 51 Mo. 244; *Freeman v. Thompson*, 53 Mo. 194; *Bailey v. McGinnis*, 57 Mo. 362.   (9) Sheriff's deed only relates back to the time of sale.   If the judgment is void, the sale is void. *Ford v. French*, 72 Mo. 251, and authorities cited. (10) There was no fraud on the creditors of O. W. Buck in the sale of this property.   Thompson and Trout had no notice.   *Sibley v. Hood*, 3 Mo. 206; *McLaran v. Mead*, 48 Mo. 115; *Hartt v. Rector*, 13 Mo. 497; *Dougherty v. Cooper*, 77 Mo. 528.   (11) An insolvent person may make a transfer of property to his wife. *Bank v. Overall*, 16 Mo. App. 510; *Craig v. Zimmerman*, 87 Mo. 475; *Walsh v. Ketchum*, 87 Mo. 427; *Clark v. Rynex*, 53 Mo. 380; *Decker v. McGinnis*, 57 Mo. 362.

GANTT, P. J.—This record presents this case.   At the time of the transactions involved, a married woman in Missouri was incompetent to make a valid contract at law.   At that time, however, she was authorized by the laws of Dakota to contract as a *feme sole*, and sue and be sued as such.

Mrs. Buck, the wife of O. W. Buck, became the purchaser of a city lot in Tarkio, Missouri, and held a bond for title from Perkins the owner, until a balance of the purchase money should be paid.

Under the firm name of O. W. Buck & Company Mrs. Buck and her husband became indebted in Dakota and the interest of herself and her husband in

said lot was attached for said debt in an action commenced in the circuit court of Atchison county, Missouri. After this attachment was levied on the lot, Mrs. Buck sold the lot to Thompson & Trout, who afterward paid the balance of the purchase money to Perkins and received a warranty deed from Perkins which was recorded.

That a married woman was not subject to a suit by attachment in Missouri prior to 1889 was decided by this court in *Gage v. Gates*, 62 Mo. 412, and that a judgment obtained against her in such a proceeding was a nullity was repeated in *Lincoln v. Rowe*, 64 Mo. 138, and that she could not be sued as a member of a mercantile firm at law was also settled in *Weil v. Simmons*, 66 Mo. 617.

From these and many other decisions, it would appear that no resident creditor could proceed by an attachment at law against a married woman in this state, for a debt contracted in this state, and this record presents the question whether our laws will give nonresident creditors remedies to collect their claims against a married woman in this state which we uniformly deny to our own citizens.

The supreme court of the United States in *Scudder v. Bank*, 91 U. S. 406, sums up the general principle in a few words: "Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. *Matters respecting the remedy, such as bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought.*"

So that, while we concede that, by the laws of Dakota, Mrs. Buck could enter into a contract of

partnership .with her husband and become bound for the debts of that partnership, the question remains, when the creditors sue her in this state, are they bound to take such remedies and such only as our laws offer against a married woman, for such she remains, notwithstanding her capacity to contract and sue and be sued, or are we bound to treat her as a single person? Judge Story in his treatise on the Conflict of Laws, section 556 [8 Ed.] says: "Having stated these general principles in relation to jurisdiction (the result of which is, that no nation can rightfully claim to exercise it, except as to persons and property within its own domains), we are next led to the consideration of the question, in what manner suits arising from foreign causes are to be instituted and proceedings to be had until the final judgment. Are they to be according to the law of the place where the parties, or either of them live? Or are they to be according to the modes of proceeding and forms of suit prescribed by the laws of the place where the suits are brought? Fortunately here there is scarcely any ground left open for controversy, either at the common law or in the opinions of foreign jurists, or in the actual practice of nations. It is universally admitted and established that the forms of remedies and modes of proceeding and the execution of judgments are to be regulated solely and exclusively by the laws of the place where the action is instituted; or   *   *   *   according to the *lex fori.*"

This principle has been illustrated in many ways. Thus in *Williams v. Haines*, 27 Iowa, 251, the supreme court of Iowa, in an opinion of CHIEF JUSTICE DILLON, held, in an action on a sealed instrument executed in Maryland that, although by the laws of Maryland, the consideration could not be inquired into; yet, as the **Iowa** statutes provided that "the want or failure in

whole or in part of the consideration of a written con-
tract might be shown as a defense," and "the addition
of a private seal  *  *  *  should not affect its
character in any respect," the consideration could be
impeached in an action in Iowa.  Said the court:
"The plaintiff must take such remedy as our laws
afford him.  He has not a vested right in the courts of
other states to all the common law incident of con-
tracts, provided the *obligation* of the contract be not
impaired."  The courts of Iowa "must administer its
own laws and not those of other states."  In *Doe ex
Dem. Mathuson v. Crawford,* 4 McLean's Rep. (U. S.
C. C.) 540, judgment was rendered in Indiana on a
note executed in Ohio.  The laws of Indiana required
an appraisement of lands before a sale on execution,
and that no lands should be sold for less than one half
of their appraised value, but the sheriff sold without
regard to the valuation laws.  The question was,
whether the sale was void for failure to comply with
the Indiana law.  The contention was that, as the con-
tract was made in Ohio, its laws should control and
not those of Indiana.  Discussing the proposition that
the remedy existing in the state where the contract
was made constituted an essential part of it, Mr.
Justice McLean, said: "It is impracticable and can not
be enforced.  *  *  *  In the present case the laws of
Ohio can not be recognized in Indiana, in giving a
different remedy from the existing laws here.  No
difficulties arise in giving effect, in any state to what is
properly called the law of the contract, in contradis-
tinction to the law of the remedy.  In the case before
us, the note was given to a firm in Cincinnati, and
payment was to be made there.  We look to Ohio
for the rate of interest,  *  *  *  demand  *  *  *
and protest and notice required by law of Ohio.  But,

as the remedy has been sought in Indiana, the laws of Indiana must govern," as to the execution and sale.

So in *Railroad v. Barron*, 83 Ill. 365, a garnishee proceeding was commenced against the company in Illinois to recover wages due Barron. The company answered it owed Barron $40, but set up that Barron was a resident of Wisconsin and. the head of a family and that by the laws of Wisconsin such wages were exempt. It was urged that, as Barron was a resident of Wisconsin and the debt was contracted in that state, the exemption laws of Wisconsin should control; but the supreme court of Illinois held that this law merely affected the remedy when an action should be brought in Winconsin and could not be invoked in Illinois, saying: "The remedy must be governed by the laws of the state where the action is instituted."

And in *Burchard v. Dunbar*, 82 Ill. 450, a married woman signed the note of her husband in New York and bound her separate estate by an express agreement to that effect. It had previously been ruled that upon this equitable charge the laws of New York permitted a judgment at law, without indicating any property out of which it was to be satisfied. *Ins. Co. v. Babcock*, 42 N. Y. 613. An action was brought on this note in Illinois, and the circuit court held on the authority of the New York decision last cited, that the note was valid and binding at law in New York and that it could be enforced as such in Illinois, but the supreme court of Illinois held that it did not follow that, because the remedy was an action at law in New York, it would be the same in Illinois, Judge SCHOLFIELD saying: "But the law of the remedy is no part of the contract. *Wood et al. v. Child et al.*, 20 Ill. 209. 'When the question is settled that the contract of the parties is legal, and what is the true interpretation of the language employed by the parties in framing it, the *lex*

*loci* ceases its functions, and the *lex fori* steps in and determines the time, the mode, and the extent of the remedy.' *Sherman et al. v. Gassett et al.*, 4 Gilm. 531; *Chenot v. Lefevre*, 3 *Id.* 643.

"That appellant charged her separate estate with the payment of the amount of the note, by the law of New York, is beyond question. * * * But this is in equity only; and, although by our present statutes * * * married women may sue and be sued, either with or without joining their husbands, and defend without regard to whether the husband shall defend or not, and judgments may be recovered against them, * * * we still preserve the distinction between actions at law and suits in equity; and there is no authority (in Illinois) for suing and obtaining judgments against them in actions at law on purely equitable liabilities."

It will be observed that, though the wife's contract was a binding obligation and she could be sued at law by the *lex loci*, and, although by the laws of the forum she could be sued with or without joining her husband, still the plaintiff was given such remedy only, to wit, a suit in equity, as the law of the forum afforded in such a case, irrespective of the *lex loci*.

In the case at bar it is argued that, had her undertaking in New York been good at law, she could have been sued at law in Illinois; so she could, but it would have been so because the law of the forum gave that right; but, as we have seen, the law of Missouri denied the right to attach a married woman prior to the revision of 1889.

In *Milliken v. Pratt*, 125 Mass. 374, the question was whether a contract made in Maine by a married woman domiciled in Massachusetts, which a married woman was not at the time capable of making under the laws of Massachusetts, *but was then allowed* by the

law of Maine, and which she could lawfully make in Massachusetts, at the time of the suit, could be enforced in the courts of Massachusetts. And the supreme court of Massachusetts answered in the affirmative, placing the decision, however, on the comity of states and that the contract, in view of the subsequent enabling act of Massachusetts, was not contrary to the policy of that state.

As the contract was valid by the *lex loci* and as the *lex fori* afforded a remedy at the commencement of the suit, there would seem to be no doubt of the soundness of that decision; but if the law of Massachusetts had up to that time regarded the contracts of married women as utterly void at law, and had not permitted them to sue or to be sued, it would seem a different conclusion would have been attained, judging from the intimation of the distinguished jurist, Mr. Justice GRAY, that is was possible "that in a state where a common law prevailed in full force, by which a married woman was deemed incapable of binding herself by any contract whatever, it might be inferred that such an utter incapacity, lasting throughout the joint lives of husband and wife, must be considered as so fixed by the settled policy of the state, for the protection of its own citizens, that it could not be held by the courts of that state to yield to the law of another state in which she might undertake to contract." The case supposed by Judge GRAY is this case in fact.

By the law of this state, Mrs. Buck's contract would have been absolutely void at law and no action could have been maintained thereon in our courts, and such was the long established policy of this state, and, unlike Massachusetts, she had not relaxed this rule prior to, and at, the time this attachment was levied.

Is this state required, out of a spirit of comity, to award a nonresident a remedy at war with her own

policy, and one which she constantly denied to her own citizens? The supreme court of Rhode Island, in *Hayden v. Stone*, 13 R. I. 106, answered in the negative. That the law of the forum governs as to remedies in the enforcement of contracts, see, also, *Pickering v. Fisk*, 6 Vt. 102; *Bank v. Railroad*, 45 Wis. 172; *Leiber v. Railroad*, 49 Iowa, 688; *Denny v. Faulkner*, 22 Kan. 89; *Green v. Van Buskirk*, 5 Wall. 307; Wharton on Conflict of Laws, sec. 121; *Bank v. Donnally*, 8 Peters, 362; *Lairdy v. Hodges*, 26 Ark. 356.

A case very similar to this arose in Illinois. An action at law was brought against a married woman. She pleaded coverture at the time of making the contract and the commencement of the action. Reply contract good by the laws of Iowa where it was made and a liability to suit as a *feme sole* in that state. Discussing the sufficiency of this reply, the supreme court of Illinois said, "a party seeking to enforce a contract valid by the laws of another state, must avail of the remedy provided by our laws. * * * That part of the replications which alleges that, by the laws of the state of Iowa, a married woman could be sued alone on contracts concerning her separate property, *did present an immaterial issue.*" but because by the laws of Illinois she could be sued alone, it was held that enough remained to make a good replication. *Halley v. Ball*, 66 Ill. 250.

A different conclusion was reached in *Robinson v. Queen*, 87 Tenn. 445. Although the court recognized the rule already stated in these words: "Under this rule we act in requiring the husband to be a party defendant with the wife, as was done in the case at bar. While under the laws of Kentucky this married woman has had her disabilities removed, and can contract, sue, and be sued as a *feme sole*, we recognize and enforce in this state (Tennessee) so much of the foreign law as

determines and fixes her liability, in other words the law of the contract; but in enforcing such liability in the courts of this state, if she is plaintiff, she must sue by next friend or with her husband, and, as defendant, her husband must be joined with her as a party.''

In other words, her *status* as a married woman by the laws of Tennessee still remained, and the remedies there given against a married woman controlled. That was a proceeding in a chancery court, and we are not sufficiently advised of the practice in that state to draw any conclusion as to its persuasiveness as an authority for the practice here invoked. The general principle announced is in harmony with the rule heretofore deduced.

In *Gibson v. Sublett*, 82 Ky. 596, the supreme court of Kentucky held a married woman personally liable in Kentucky on a note executed in Louisiana, although, if she had made the note in Kentucky her promise would have been void. The reasons for this decision are tersely stated by the court. They say: "And if, by the law of the place of the domicile of the husband, a married woman has a capacity to sue or to make a contract, or to ratify an act, her acts so done will be held valid everywhere. Story's Conflict of Laws, sec. 66a. If, then, the contract is to be held valid and binding here, because it is so in the state where it was made, it would seem to reasonably follow that her property here should be subject. For, to hold that a valid and binding contract is not enforceable at any time, nor in any manner, is absurd," and the court consequently held, "that the remedy provided for the satisfaction of judgments (in Kentucky) should be applied as though the judgment was against a *feme sole*."

Entertaining, as we do, the highest respect for the court that decided this case, we do not think its reasoning convincing in that case. In our opinion, it has

mingled the *"lex loci contractus"* with the *"lex fori,"* which are distinct in their nature and obligation, and treats them as one. We do not think that many other courts have gone so far. The rule which recognizes the binding force of the contract where made, has never gone to the extent of attaching to it the local remedies and carrying them into another jurisdiction, but it is left to each nation and state to enforce such a contract according to its own laws.

As already said, when this action was brought, this court had, by uniform decisions, held that a married woman could not be sued by attachment in actions at law in Missouri. No such remedy was available in our courts in favor of resident creditors. Had any citizen of Missouri, on a contract made or to be performed in this state, proceeded by attachment at law against this real estate, no lien would have been created and no valid judgment could have been rendered against Mrs. Buck and no purchaser for value would have been affected, but if plaintiff's contention is true, the fact that this claim originated in Dakota has changed all this and his attachment is as valid as if Mrs. Buck was a single woman. But Mrs. Buck is still a married woman and there was no such exception, in our code of procedure, in favor of contracts executed beyond our borders when this suit was brought, and an attempt to enforce such a distinction out of a spirit of comity would create endless confusion. A purchaser's rights ought not to depend upon the accidental circumstance of the place of the execution of the contract upon which the judgment is based.

Our courts administer justice without distinction, according to the modes prescribed by the state, and those who seek them must take such remedies as are prescribed.

An infant's contract may be good in Illinois, but; if he is sued in Missouri, he is proceeded against as an infant, by next friend or guardian. His *status* for the purposes of the action is determined by our laws in force when the suit is brought.

It follows that the circuit court properly held that the proceedings by attachment against Mrs. Buck were void, and hence presented no obstacle to the purchase by Trout and Thompson, and its judgment is affirmed. BURGESS, J., concurs; SHERWOOD, J., dissents.

### STATEMENT.

SHERWOOD, J. *(dissenting).*—Lot number 16 in block number 9, in the town of Tarkio furnishes the subject-matter for this litigation which takes the form of an equitable proceeding to divest the title out of certain of the defendants who had bought the equitable interest in the lot of Buck and wife *after* the levy of the writ of attachment on the lot, plaintiff being the purchaser under such attachment proceedings, which were instituted in March, 1887, amended in June, 1889, so as to include two personal judgments rendered against Buck and wife then residents of Dakota, and judgment duly rendered thereon after publication against the Bucks as nonresidents, who were husband and wife and sued as copartners in the original suit by attachment.

Thompson and Trout, two of the defendants herein, purchased the interest of Buck on the twenty-seventh of July, 1889, abstracts of the attachment suit then being on file in the proper office.

In June, 1890, Perkins, the holder of the legal title to the lot, made deed to Trout and Thompson, the previous purchasers of the equitable title of Julia E. Buck, the wife and her husband, O. W. Buck.

Buck and wife and Trout and Thompson, defend-
ants in the present proceeding, averred that, Mrs. Buck
being a married woman, the court in which the attach-
ment proceeding was brought, acquired no jurisdiction
over her or her husband, or the subject-matter in that
suit. The answer also contained general allegations of
denial of the averments of the petition, and plaintiff
replied.

The lower court found in favor of defendants, and
plaintiff appeals. Other facts as necessary will be
hereafter adverted to.

OPINION.

1. This record discloses the fact that the predom-
inant question herein presented is, whether a married
woman, resident in Dakota, capable by the laws of that
state of contracting as a *feme sole* in every particular,
and of suing and being sued like any other person, can
be sued in this state as a nonresident and her lands
attached to satisfy a debt.

Having elaborately considered the authorities, MR.
JUSTICE STORY reaches the conclusion that: "Generally
speaking, the validity of a contract is to be decided by
the law of the place where it is made.   *   *   *   If valid
there, it is by the general law of nations, *jure gentium*,
held valid everywhere, by the tacit or implied consent
of the parties.   The rule is founded, not merely in the
convenience, but in the necessities of nations; for, oth-
erwise, it would be impracticable for them to carry on
an extensive intercourse and commerce with each other.
The whole system of agencies, of purchases and sales,
of mutual credits, and of transfers of negotiable instru-
ments, rests on this foundation."   Story on Conflict
of Laws, sec. 242.

Elsewhere, the same eminent author says:   "In
regard to questions of minority or majority, compe-
VOL. 124—13

tency or incompetency to marry, incapacities incident to coverture, guardianship, emancipation, and other personal qualities and disabilities, the law of the domicil of birth, or the law of any other acquired and fixed domicil, is not generally to govern, but the *lex loci contractus aut actus*, the law of the place where the contract is made or the act done."

"Although foreign jurists generally hold that the law of the domicil ought to govern in regard to the capacity of persons to contract, yet that the common law holds a different doctrine, namely, that the *lex loci contractus* is to govern."

"If by the law of the place of the domicil of the husband a married woman has a capacity to sue, or to make a contract, or to ratify an act, her acts so done will be held valid everywhere." Story on Conflict of Laws, secs. 103, 241, 66a.

From these premises, supported, as is needless to say, by abundant authority, let us deduce and apply the principles they enunciate to the facts heretofore set forth.

This case must then be dominated by the law of Dakota; that law made Mrs. Buck as to the contracts which resulted in the judgments obtained, a *feme sole* to all intents and purposes.

By that law the *feme* defendant made contracts which being valid where made, became *eo instanti* valid everywhere, and capable of being enforced in like manner as in the state of their origin. Those contracts thus made and judgments obtained in Dakota, bore with them wherever taken the stamp of the *status*, capacity and condition of the *feme* defendant conferred by the laws of that state, hence she is to be regarded in reference to such contracts and judgments, as a *feme sole* in *this* state, with full capabilities and liabilities as such, and with none of the disabilities incident to

coverture in this state.   This must be so, or else the acknowledgment of the validity of the contracts would be but a barren and idle ceremony conferring no benefits and affording no remedy.   Because, if in this state Mrs. Buck be permitted to assert her coverture as a defense to such contracts, she thereby overthrows the force and effect of the law under which those contracts were made and those judgments recovered.

We hold, then, that Mrs. Buck, as to such contracts, etc., already mentioned, occupies the attitude before this court of a *feme sole*, suable as such in every point and particular as if she were discovert. · For this reason our laws which do not admit a recovery of a personal judgment, against a *feme covert* in an action at law, do not apply, and were not intended to apply, to such a case, as will be more fully seen later on.

A number of well considered cases support the views here expressed.   Thus in Kentucky, a married woman is incapable of binding herself by contract except in a limited way as to necessaries, but yet in that state a married woman and her husband being domiciled in the state of Louisiana, where such contracts were valid, having executed with her husband a promissory note, it was ruled that the payee of such instrument could maintain an action on such note in the state of Kentucky against the *feme covert*, recover a judgment against her as a *feme sole* and subject her general property in that state to the payment of such judgment.   *Gibson v. Sublett*, 82 Ky. 596.

In that case the principles announced by Story were referred to and followed, and it was there aptly and forcibly said: "If, then, the contract is to be held valid and binding here, because it is so in the state where it was made, it would seem to reasonably follow that her property here should be subject.   For, to hold that a valid and binding contract is not enforceable at any

time, nor in any manner, is absurd.  *  *  *  In our opinion, whenever it is ascertained and determined, by judgment of court, that a contract made by a married woman in another state is valid and binding, as, according to the rule founded upon comity between the states, the contract in this case must be adjudged, the remedy provided for the satisfaction of judgments should be applied as though the judgment was against a *feme sole* or a married woman invested with the rights and subject to the responsibilities of a *feme sole.*"

The point that no personal judgment was rendered against the married woman was not passed upon in that case, because not assigned for error; but the evident drift and intimation of the opinion sanction the rendition of such judgment, and the quotation there made from *Hart v. Grigsby*, 14 Bush, 544, and the reference thereto sets this point forth in a very clear light. In that case it appears that by a statute of Kentucky, a decree of chancery in certain circumstances might be obtained conferring on a married woman the power to make contracts, sue and be sued as a *feme sole*, and it was there said in reference to an instance where such power had been conferred: "Power to make a contract necessarily subjects the person possessing the power to the obligations legally incident to the contract made in the exercise of the power; and a married woman authorized by statute to contract as a *feme sole* is bound as a *feme sole* upon any contract she may make under the power, and is subject to all the remedies to which she would have been subject if unmarried." In that case it is worthy of remark, no change had occurred in the general laws of Kentucky respecting the method of procedure against married women.

In North Carolina, a married woman (with one exception not necessary to be here adverted to) is incapable of binding herself by contract, nor is there

any method of procedure provided for recovering a personal judgment against her, but nevertheless it has been held in that state that a promissory note executed by a married woman in the state of New York, where by the late acts (1884) she could contract as a *feme sole*, could be sued in North Carolina, and such married woman being served with process in that state, a personal judgment could be rendered against her. *Taylor v. Sharp*, 108 N. C. 377.

In a later instance in that state, where the note was executed by the *feme covert*, in South Carolina, and being there valid, it was ruled that a personal judgment could be rendered against her. *Wood v. Wheeler*, 111 N. C. 231.

Both of these cases proceed upon the theory that, the contract being valid where made, that validity attends it and determines the *status*, condition and capacity of the maker in the *forum* of another state whose laws do not recognize the validity of such contracts, when made within the jurisdiction of such *forum*.

A married woman resident in Kentucky, and emancipated from the disabilities of coverture by a decree to that effect in a court of that state, executed as surety of a firm of which her husband was a member, a promissory note, and it was held in a suit instituted in Tennessee that a judgment could be recovered against her on such note, and her property in that state sold for the satisfaction of the judgment thus rendered, though by the *lex fori* there no suits could ordinarily be maintained against a married woman there resident. *Robinson v. Queen*, 87 Tenn. 445.

In Illinois the same principle has been enforced. Thus a *feme covert* resident in that state, executed a promissory note in the state of New York, whereby by the statutes and adjudications of that state she only

charged her *separate equitable estate*. Subsequently she and her husband, who had joined in the execution of the note, were sued in Illinois on the note in an action at law and judgment recovered, but it was held in reversal of the judgment, that, as her contract by the law of the place of contract was only of an *equitable character*, the only recovery which could be had against her was by a proceeding *in equity*, notwithstanding by the statutes of Illinois then and theretofore in existence, a married woman could be sued at law, either with or without her husband, judgment recovered against her and her property sold to satisfy the same. *Burchard v. Dunbar*, 82 Ill. 450.

The clear corollary from this case is that, had the *feme* by the statutes of New York bound herself by the execution as a *feme sole*, a legal judgment might have been recovered against her in the state of her residence. In other words, her *status* toward the note and her capacity respecting the same, as well as the obligation of the contract, were determined by the *lex loci contractus*.

In Massachusetts, a married woman resided. By the statutes of that state, at that time, she was incapable of contracting. She made, however, a written guaranty of her husband's debt and the instrument was forwarded and delivered in Maine, where such contracts were valid and binding and where they could be enforced in the same manner "as if she were *sole.*" Subsequently, the statutes of Massachusetts were so amended that a married woman could contract and could be sued, and, in the particular instance referred to, the *feme covert* who gave the guaranty, was sued in Massachusetts and it was held after an elaborate and learned discussion, in which the principles heretofore quoted from STORY as to the force and effect of the law of the place of contract were distinctly recognized that

the action could be maintained. *Milliken v. Pratt*, 125 Mass. 374. Of the correctness of this ruling there would seem to be no doubt, as the statutes of Massachusetts, at the time of action brought, were in substantial conformity with those of Maine.

In *Spearman v. Ward*, 114 Pa. St. 634 (8 Atl. Rep. 430) a married woman residing in Ohio executed certain promissory notes there, and was afterwards sued upon them in Pennsylvania, where she was incapable of contracting. In that case the action failed because it did not appear that the *feme* defendant was capable of making the notes under the laws of Ohio, the court in that case saying: "It was conceded upon the argument that, if by the law of the state of Ohio the common law disabilities of married women have been removed, and the defendant is clothed with a general power of contracting, the same as a *feme sole*, the plaintiff would be entitled to *obtain a judgment against here, which could be enforced by execution as in other cases*. It is very certain that if the defendant had carried on business in this state, and had given the notes here, there could be no recovery. The reason is that the note or other obligation of a married woman here is void, as at common law.  *  *  *  The statutes of the state of Ohio attached to the special verdict do not confer upon a married woman a general power of contracting. They do not authorize married women to enter into general business, and bind themselves personally for notes given."

This language bears with it the clear recognition of the doctrine that, had the *feme* defendant been able in Ohio to bind herself *generally* by the notes sued, this would have been a sufficient basis in Pennsylvania for a *general judgment and general execution* against her, though not allowable against women resident in that state. This view of that case is taken in the subse-

quent one of *Evans v. Cleary*, 125 Pa. St. 204 (17 Atl. Rep. 440). In that case a married woman residing in Illinois, contracted a debt which she was authorized by the statutes of that state to contract as if she was unmarried, and which debt could be enforced against her separately. Action was afterwards was brought on this debt in Illinois and judgment recovered against the contracting *feme*.

Subsequently a suit was begun in Pennsylvania on the judgment obtained against both the husband and the wife; dismissed as to the former and judgment as to the latter. This judgment was affirmed, the supreme court holding, that being individually liable where the contract was made and the judgment recovered, her *status* remained unchanged in the state where the suit was brought, and that joinder of the husband was unnecessary.

In a subsequent case in the same state, an action was brought on a bond executed by a married woman in the state of Delaware where she was liable personally on her contract, she being then resident in Pennsylvania. She resisted the action, one ground being that, owing to her disability, the contract could not be enforced against her personally. But thereupon it was held that judgment was properly recoverable against her in the state of Pennsylvania, the supreme court remarking: "The remedy and the effect to be given to any existing disability in the maker of the instrument are also to be determined by the law of the place of payment. *Hill v. Chase*, 143 Mass. 129. * * * The courts of this state will administer in such case the *lex loci contractus as* against one under disability. *Evans v. Clearly*, 125 Pa. St. 204. * * * We have, therefore a contract made and, in legal effect, delivered in Delaware, for the puchase of real property in that state, upon which, according to

Ruhe v. Buck.

the laws of that state, the defendant is personally liable notwithstanding her coverture. In passing upon it here, our courts will secure to her the advantages, and enforce against her the obligations of her contract in accordance with the laws of that state." *Baum v. Birchall*, 24 Atl. Rep. 620.

In *Wright v. Remington*, 41 N. J. L. 48; it was hold that an ordinary action might be maintained against a married woman alone on a contract made by her in Illinois, where she was capable of contracting as if unmarried, notwithstanding there were no such statute in New Jersey and that the enforcement of such a contract in New Jersey was not repugnant to the general interests of the citizens or of the policy of that state.

From these authorities, the rule is readily deducible that, although the *lex fori* must apply as to the remedy, yet that it belongs to the *lex loci contractus* to interpret the contract; ascertain its validity; the nature of its obligations; the capacity and *status* of the contracting party, and, having done this, the *lex fori* applies the remedy in accordance with the legal *status* of the party sued as previously determined by the law of the place of the contract.

Thus, if a *feme covert* is sued in a jurisdiction where she is incapable of contracting, on a contract executed in a country where she is capable, by the form of the action brought against her, she will be treated and dealt with as a *feme sole*. In no other way, indeed, could validity, force or effect be given to contracts made in another jurisdiction, unless the courts, when appealed to to enforce such contracts, aimed to do so *in such a manner as to give effect to them according to the law which gave them validity*. *Camfranque v. Burnell*, 1 Wash. C. C. 340.

Bishop says: "A court, called upon to enforce a contract made in another state or country, tests its validity by the foreign law, except where domestic policy forbids.  Not that in any proper sense the foreign law controls the tribunal; but, being duly proved, it is, by that portion of its own law which is termed international, made domestic for the purpose." Bishop on Contracts [Enlarged Ed.], sec. 1371; see, also, *Bank v. Earle*, 13 Pet. 589; Story on Conflict of Laws, secs. 38, 80, 99.

2.   If the foregoing observations be taken as correct, no difficulty is encountered in holding that the *feme* in this case was properly proceeded against by attachment.  If her *status* by the law of Dakota was, respecting the contracts in question, that of a *feme sole*, attachment would necessarily run against her as well as against any other nondisabled person.  In two of the cases already cited, *Robinson v. Queen* and *Evans v. Cleary*, *supra*, the proceedings were instituted by attachment.

A different conclusion as to the right to sue a married woman by attachment has been reached in Rhode Island.  *Hayden v. Stone*, 13 R. I. 106.  But that case is entirely *consistent with itself*, for there it is declared that *no suit at all* could be there maintained against a married woman, even on a promissory note executed by her in Massachusetts and conceded to be valid by the laws of that state.

3.   Taking it, then, for granted that the *feme* defendant could be sued by attachment, and the writ of attachment being levied on the interest of herself and husband in the litigated lot, and, due notice of the pendency of the attachment having been filed in the proper office prior to the purchase by Trout and Thompson, it follows that plaintiff's title to the lot purchased at the attachment judgment sale, will prevail over that of

defendants Trout and Thompson, who purchased the lot of Buck as the representative of his wife, and subsequently to the levy of the attachment writ and subsequently to notice given of the attachment lien, took subject thereto; and as an abstract of the attachment was duly filed as required by section 543, Revised Statutes, 1889, they can not successfully deny that they had notice of the levy of the writ, notwithstanding they may have had no actual notice thereof. And that Mrs. Buck was a partner in the firm of Oliver W. Buck & Co.; that such firm was indebted, as stated, and that she was not a resident of this state when the attachment suit was brought was settled and determined by the judgment in that suit as effectually as if she had been personally served with ordinary process. In *Irvine v. Leyh*, 102 Mo. 200, the reporter makes the court say that notice by *publication was less effectual* than *by personal service*. But this was a mistake, as three of the members of the court, the writer of this opinion among the number, took the contrary view, to wit, that a person notified by *publication is as much notified* as those served within this state with *personal process* by an officer.

The only difference in legal effect between the two methods of service, so far as necessary to mention them here, would be, in the former, a bill of statutory review would be allowable, and in the second, no such bill would lie.

It does not appear that the sheriff notified the actual tenants of the property, but this, under the ruling in *Durossett's Adm'r v. Hale*, 38 Mo. 346, would not invalidate the levy.

For these reasons there was error in dismissing plaintiff's petition. The foregoing was tendered as the opinion of the court, but as my associates entertain and express different views, I file this as my dissent.