Robinson *v.* Queen.

ROBINSON *v.* QUEEN.

*(Nashville.   March 8, 1889.)*

1. MARRIED WOMEN.   *Validity of note executed in another State.   Lex loci contractus.*

Married woman's note, executed and made payable in a foreign State, where she and the payee were domiciled, and under whose laws she was competent to make such contract, is valid and enforceable in this State.

The *lex loci contractus* controls.

Cases cited and approved: Bank *v.* Railroad, 2 Lea, 676; Bank *v.* Walker, 14 Lea, 299; Talmage *v.* Transportation Company, 3 Head, 337; Pearl *v.* Hansborough, 9 Hum., 426; 19 Ohio St., 260 (S. C. 2 Am. Rep., 395); 91 U. S., 406.

Cited and distinguished: 125 Mass., 374; 46 Miss., 618 (S. C., 12 Am. Rep. 319); 82 Ill., 450 (S. C. 25 Am. Rep., 334).

2. SAME.   *Conveyance of separate estate.   Husband's joinder in deed.   Acknowledgement.*

Married woman owning separate estate, with unlimited power of disposition, may convey it under Act of 1869–70, Ch. 99, without her husband's joining in her deed; but such deed is void unless her privy examination is taken "before a Chancellor or Circuit Judge of this State, or Clerk of the County Court," as required by the Act.

Act construed: Acts 1869–70, Ch. 99.

Code cited: §§ 3347 *et seq.* (M. & V.); §§ 2486a–2486f (T. & S.).

Case cited: Sherman *v.* Turpin, 7 Cold., 382.

---

FROM RUTHERFORD.

---

Appeal from Chancery Court of Rutherford County.   W. S. BEARDEN, Ch.

LELAND JORDAN, J. A. JONES, and E. F. SMITH-
SON for Robinson.

JOHN E. RICHARDSON for Queen.

FOLKES, J.   The first question to be disposed of
in this cause is whether a married woman, domiciled
in the State of Kentucky, is liable, in the courts
of this State, upon a note made by a firm of which
her husband was a member, and executed by her
as surety for such firm, where, under the laws of
Kentucky, she had, before the execution of the note,
been emancipated from all the disabilities of cover-
ture, and clothed with all the powers of a *feme
sole*, so far as the right to contract and to sue and
be sued were concerned.

This inquiry we answer in the affirmative.

Though some authorities may be found to the
contrary, it may now be said to be well settled law,
that the validity of a contract, the obligation thereof,
and capacity of the parties thereto, is to be deter-
mined by the *lex loci contractus* (in the sense of the
place of performance), unless there be something in
the contract which is deemed hurtful to the good
morals, or injurious to the rights of its own citizens,
by the laws of the State or country whose courts
are called upon to enforce the contract made in a
foreign State or country.

The notes involved in this suit were made in
Kentucky, payable there, the makers and payees re-
sident there, and, as we have already stated, were

valid there, and binding and enforceable against the married woman as fully as if she were a *feme sole*. See General Statutes of Kentucky, Article IV., Section 1, and Article II., Sections 6 and 7, where authority is given the Circuit Courts of that State to pass judgment of emancipation upon married women under certain circumstances therein set forth. A certified copy of such proceedings is exhibited in this record, showing compliance with the statute on the part of Mrs. Queen.

Under these facts what are the powers, and what is the duty of the courts of this State, when, by reason of the fact that the defendant has property in this State, we are called upon to enforce, as against the married woman, the collection of the amount due on the notes in question?

The general rule as to the enforcement by one State of a contract valid in the State where made, and to be performed, is not denied by the counsel for the defendant; but it is insisted that inasmuch as a note made by a married woman is void under the laws of this State, and inasmuch as it is the fixed policy of this State to throw around married women the shield of disability, we should not, under any supposed obligation of comity, entertain a suit predicated upon such a contract.

If this were a suit against a married woman, a citizen of this State, on a contract made out of the State, there would be much force in the insistance of the defendant. But here the law of the domicile is the same as the law of the contract, and we

merely encounter a conflict between the law of the contract and the law of the forum.

In such case, especially where the foreign law concerns the capacity of parties to contract, as affected by the disabilities of infancy and coverture, the *lex loci contractus* is to govern. Story's Conflict, Sections 103, 241. And although Chancellor Kent, in the early edition of his commentaries, seemed inclined to favor the contrary doctrine of the civilians, yet in the notes, afterward added, he unequivocally concurs in the conclusions of Mr. Justice Story. 2 Kent Com., 233, Notes 458, 459 and note. See also Whar. Conflict, Section 96.

See also a very elaborate consideration of the authorities in the able opinion of Gray, C. J., in *Milliken* v. *Pratt*, 125 Mass., 374, which, while it fully sustains our position here upon principle and authority, goes much farther than we are called upon to do in this case. That being a case where the married woman, domiciled in the State of Massachusetts where such a contract was void, made a note in Maine, by letter, and such a contract being valid in Maine, was enforced by the court in Massachusetts. It is valuable for its research and ability in the discussion of the question underlying the one now before us, and for this reason is referred to, without intending to approve or dissent from the point to which the discussion there goes.

Our own State has more than once recognized and enforced the principle which is controlling in this case. *Bank* v. *Railroad*, 2 Lea, 676; *Bank* v.

*Walker*, 14 Lea, 299, 306; *Talmadge* v. *N. O. C. & T. Co.*, 3 Head, 337, 341–2; *Pearl* v. *Hansbor ough*, 9 Hum., 476, 433, 436.   See also *Knowlton* v. *The Erie Railway Co.*, 19 Ohio Stat., 260; S. C., 2 Am. Rep., 395; *Scudder* v. *Bank*, 91 U. S., 406.

The case of *Bank of Louisiana* v. *Williams*, 46 Miss., 618 (S. C., 12 Am. Rep., 319), does not stand in the way of the conclusion we have reached, although some of its argument may seem to do so. There the obligation of the married woman was dependent upon a charter of a Louisiana corporation authorized to lend money to the "agricultural interest on notes and mortgages," and to make such contracts with married women and to enforce the same against their property.   It was held that the Act in question contemplated the emancipation of the wife so far, and so far only, as to capacitate her to join with her husband in the "hypothecatory obligation."   And while she thus subjected all her property dotal, as well as that embraced in the mortgage, it was not intended nor supposed that the obligation of the wife extended further than to cover her dotal and paraphernal rights and property in that State.   As is said by the learned judge rendering the opinion in that case, "the transaction stands upon ground local to Louisiana, and a policy there which is exceptional from the general rule and general law.   Assuming, as a doctrine of the law, that the contract of a married woman, valid at the place where made, shall be so regarded everywhere, does that embrace an obligation in-

curred by her, growing out of special circumstances, and not included in the general law and policy of the place, but resting altogether on special reasons and *looking to local property, for its payment?*" And continuing, it is said "if, by the law of Louisiana, a married woman was competent to incur debts generally, and coverture imposed no disability, it would be a different question from that we are dealing with." The case at bar presents exactly that "different question." Here, as we have seen, under the proceedings in Kentucky, the disability of coverture was absolutely removed and the married woman was authorized to contract debts generally.

It must be noticed also that in the *Bank* v. *Williams* the married woman was a resident of Mississippi at the time she made the Louisiana contract and at the time she was sued, which presents a very different phase of the question under consideration. Nor is there any thing in *Burchard* v. *Dunbar*, 82 Ill., 45 (S. C., 25 Am. Rep., 334), in any manner antagonistic. It merely holds that "where a contract of *an equitable character* is made in another State, in which there is no distinction between courts of law and equity, it can still be enforced in Illinois only in a court of equity." It recognizes fully the doctrine that a contract of a married woman, valid where made, will be held valid in another State, but decided that in enforcing such contract regard must be had to the forms of pleading in force in the State where the remedy

is sought. In other words, the *lex fori* determines the nature of the remedy as to parties, forms, etc. Under this rule we act in requiring the husband to be a party defendant with the wife, as was done in the case at bar. While under the law of Kentucky this married woman has had her disabilities removed, and can contract, sue, and be sued as a *feme sole*, we recognize and enforce in this State so much of the foreign law as determines and fixes her liability, in other words the law of the contract; but in enforcing such liability in the courts of this State, if she is plaintiff, she must sue by next friend or with her husband; and, as defendant, her husband must be joined with her as a party.

Comity, as it is sometimes called, but more properly the rules of private international law, go no further than to require the recognition and enforcement of the law of the place of the contract; leaving to the State called upon to enforce such law, the use of its own forms and machinery, as far as the same can be adapted to the end in view.

Without pursuing this branch of the case further, the court is of opinion that the decree of the Chancellor dismissing the bill upon the ground that no judgment could be rendered against the married woman on the note is erroneous, and should be reversed and decree here made in favor of complainants for the full amount of the notes, with interest and costs.

This brings us to the consideration of the second question presented in this record.

The bill herein not only attaches certain property of the married woman upon the statutory grounds, but seeks to set aside as fraudulent a conveyance made by the married woman to her brother and co-defendant, I. D. Miller, alleging that the conveyance was made to hinder, delay, and defeat complainants in the collection of their debt.

Much proof is taken, *pro* and *con*, as to the *bona fides* of the sale and conveyance to her brother. With the burden of proof on complainants, and the positive testimony of the parties defendant, we are unable to discover any thing more for the complainants than suspicions, predicated upon the relation of the parties, the apparent inadequacy of price, and the coincidence of the conveyance with the maturity of a part of complainant's debt, and the embarrassed situation of the husband at the time, all of which may be said to be sufficiently met and overcome by the defendant's proof, so far as the bill seeks to set aside for fraud the sale of the store-house and lot in Murfreesboro to I. D. Miller.

But it is charged in the bill that if such sale to the brother be not void as made in fraud of creditors, it is void and of no effect by reason of the fact that it was executed by Mrs. Queen, without her husband joining with her, and without privy examination. The record shows that the bill was filed on December 22, 1886. On the 21st of

December the deed in question was registered. It was dated on the 18th of December, and on the same day acknowledged by Mrs. Queen before a Notary Public in Kentucky. It was not signed by her husband, and her acknowedgement is in the form prescribed by our statute for persons *sui juris.*

If such acknowledgement without privy examination is void, then the property having been attached in this cause as the property of Mrs. Queen is liable to be subjected to the satisfaction of the decree to be rendered against her. Is it void?

The status of this married woman, under the proceedings in Kentucky, whereby she was emancipated from the disabilities of coverture, however much recognized and enforced in this State, as to the validity of her contracts made in that State, cannot dispense with or in any manner effect our own laws with reference to the conveyance of real estate situated here, nor the prerequisites for registration of deeds as against creditors. So that we must look to the laws of our own State alone as determining the sufficiency of the acknowledgement of this deed.

There had been an ante-nuptial contract made between Mrs. Queen and her then contemplated and now husband, which was duly acknowledged and registered in Rutherford County, whereby the house and lot in question, as well as other property, was settled to her sole and separate use. It is insisted by her counsel that, as the owner of a separate estate, she has the power to dispose of her

realty by a deed without privy examination, under the authority of *Sherman* v. *Turpin*, 7 Cold., 382, and under the provisions of Section 3350 of (M. & V.) Code.

In *Sherman* v. *Turpin* it was held that privy examination is not necessary, and that the husband need not join in the deed conveying the wife's separate estate where the instrument creating the estate gives her all the powers of a *feme sole*. The language of the instrument in that case, as appears from the opinion, was as follows: * * * "With power, at her pleasure to sell, convey, devise, or otherwise dispose of the same, in and when she may see proper, as fully as if she were a *feme sole*."

The marriage contract in the case at bar does not, in terms, give her the right to convey as a *feme sole*, the strongest language used in this respect being: "To her sole and separate use, free from debts, etc., of husband, with power to said Mary S. to use and dispose of the same as she may think proper, both the realty and the rents and income upon it, and the personalty, and the interest and income from it, and also with power to the said Mary S. to change the realty into personalty, or the personalty into realty, when and so often as she may think proper." So that the case is not controlled by *Sherman* v. *Turpin*, which is decided upon the particular language of the conveyance creating the estate, which, in terms, gave the right of disposition as fully as if she were a *feme sole*.

Nor can this deed be sustained under the 3rd Section of the Act of 1869–70, carried into the Code (M. & V.), Section 3350, for if she would, under an instrument creating a separate estate, where the power of disposition is not withheld, have the power to convey without her husband joining with her, such conveyance would not be valid, unless her privy examination takes place before a Chancellor or Circuit Judge of this State, or Clerk of the County Court, as provided in the 2d Section of said Act, carried into the compilation of Milliken & Vertrees at Section 3347.

This deed, as we have seen, being acknowledged by the married woman before a Notary in Kentucky, is, therefore, ineffectual to divest her of her title to the property therein described, and the same was subject to the attachment in this cause.

The majority of the Court is of opinion, and decides, that under the Act of 1869–70, a married woman, owning a separate estate, where there is no restriction upon her power, is authorized to convey such estate, without her husband joining in the deed, where she has a privy examination before a Chancellor or Circuit Judge of this State, or Clerk of the County Court. Not deeming it necessary to decide this question, and not being able to agree with the majority, I would have preferred not considering here the effect of this Act in the matter referred to. The majority, however, think it important that the question should be settled, and that it fairly arises in this case in such manner as

to justify its settlement. I content myself with saying that it may be admitted that the language of the Act is sufficient to justify such construction of it; but that this, like all other Acts of the Legislature, should be construed with reference to the evil intended to be cured, and that by so doing we are enabled to arrive at the intention of the Legislature, which is, after all, the cardinal rule of interpretation. Applying this rule, I am unable to resist the conclusion that the Act in question, so far as it relates to separate estates, was intended to put at rest the vexed questions as to the *powers of sale*, etc., possessed by married women over their separate estates, which a series of decisions in this State had rendered troublesome, beginning with *Morgan* v. *Elam*, in 4 Yerg., and on down to *Young* v. *Young*, in 7 Cold. The subject of her *powers* might well be settled without disturbing the *form* of her *conveyance*. And that in view of the jealousy with which our legislation, and that of our mother State of North Carolina, since the Act of 1715, has watched over and provided for the joint execution of deeds by husband and wife, we should not infer that the Legislature intended, in the Act in question, to deprive a married woman of the protection, from extraneous influence and ill-advised action, which the husband's presence would be likely to secure to her.

Without elaboration, I feel constrained to dissent from the holding of the majority of my brothers on the effect of the Act in question.

Robinson *v.* Queen.

This difference, however, does not affect the result already reached in this cause.

The decree of the Chancellor will be reversed, and judgment here for the amount of the notes, with interest and costs, and unless paid within the time to be fixed in the decree, the property attached, including the house and lot, will be sold to satisfy the judgment.