McGill et al. v. Cockrell, Jr., et al.—Syllabus.

ROSA CHAPPELLE MCGILL AND S. D. MCGILL, HER HUS-
BAND, *Appellants,* v. A. W. COCKRELL, JR., AND ALSTON
COCKRELL, AS LATE PARTNERS UNDER THE NAME OF
COCKRELL & COCKRELL, *Appellees.*

Opinion Filed April 7, 1921.

1.  The contract of an unmarried woman whereby she employs
    attorneys at law to conduct specific litigation involving her
    property and whereby she agrees to pay a reasonable com-
    pensation for such services is not annulled by her marriage
    before the litigation is completed or the services performed.

2.  A married woman may be sued at law for breach of her ante-
    nuptial contract by joining her husband as defendant.

3.  Section 2591, General Statutes, 1906, providing that the hus-
    band shall not be liable to pay the debts of the wife con-
    tracted before marriage, but that the property of the wife
    shall be subject to such debts, does not create a lien upon
    the separate property of the married woman to secure her
    ante-nuptial creditors whose claims are unliquidated and not
    reduced to judgment.

4.  The ante-nuptial contract of a married woman is not an-
    nulled nor rendered unenforceable by her marriage. Upon
    the obligation created by contract an action may be brought
    for a breach of it by her by joining her husband as a de-
    fendant, and the judgment, if any, is obtained, must be
    satisfied out of her property.

An Appeal from the Circuit Court for Duval County;
Daniel A. Simmons, Judge.

Order reversed.

*John T. G. Crawford,* for Appellants;

*Knight* & *Adair,* for Appellees.

ELLIS, J.—This is an appeal from an order overruling a demurrer to an amended bill of complaint in which the complainants seek to subject the separate property of a married woman to the payment of a sum of money alleged to be due as the reasonable compensation for professional services rendered to her partly during her widowhood and partly after her remarriage. It is prayed that the "defendant or defendants" be decreed to be indebted to complainants, ascertain in what sum and enforce the payment thereof out of the income and profits of the real estate described and alleged to be the property of the married woman, or that the property, both real and personal, be sold to pay the sum ascertained to be due with interest and costs; that the status of the title, possession and tenancy of the property and the claim of third persons be ascertained, a receiver appointed, and in the event of a sale of the property that complainants may have the right to purchase, and that the defendants be restrained from selling the property or subjecting it to any charge or lien, and for general relief.

The bill alleges that Rosa Chappellee McGill before her marriage to S. D. McGill was the widow of Pat Chap pelle, from whom she inherited and was in possession of considerable property, both real and personal, which her deceased husband had earned and accumulated in his business, which was that of proprietor of a traveling show. That shortly after his death his two brothers, Lewis W. and James E. Chappelle, began a suit in chancery against the widow, based upon the claim that as surviving partners of Pat Chappelle they were entitled to the possession of the personal property and real estate of which he died possessed, and prayed for appropriate

relief. That the complainants in this suit, at the request
of Rosa Chappelle, the widow, appeared in the suit in
her behalf and prepared and filed her answer. That con-
sidering the value of the property involved and the
services rendered, which resulted in a decree in favor of
the widow, ten thousand dollars was a reasonable com-
pensation. That before final decree, however, and after
the pleadings were filed, Rosa Chappelle, the widow,
intermarried with the defendant S. D. McGill; that the
complainants in this suit continued in the cause as attor-
neys and solicitors for Rosa, and had sole charge of the
defense; that their services included representation of
their client both in the Circuit and Supreme Courts, to
which last court they were compelled to appeal the cause
because of unfavorable decree of the Circuit Court
against their client. By amendment the bill alleges that
after Lewis W. and James E. Chappelle commenced their
suit against Rosa, she by an instrument of writing,
signed by her while unmarried, confirmed her retainer of
the complainants, and by that instrument retained the
complainants to represent her in the litigation; that she
has never modified or denied her "liability to pay" com-
plainants "a reasonable sum of money for their said
advice and services," but on the contrary during the year
1917, and at other times the defendants acknowledged in
writing the "liability of Rosa to pay her indebtedness" to
the complainants.

The demurrer to the amended bill attacks it upon the
following grounds: First, it is not alleged that the
amount claimed to be due to complainants from the
defendant Rosa is due upon any agreement made by her
in writing for the benefit of her separate property;
second, complainants have an adequate remedy at law;
third, the amount claimed by complainants is not due for

the price of property purchased by the defendant Rosa, or for labor or materials used with her knowledge or assent in the construction of buildings or repairs or improvements upon her property, or for agricultural labor bestowed thereon with her knowledge; fourth, it affirmatively appears that no lien exists upon the property in favor of the complainants; fifth, the writing alleged to have been given by Rosa is not sufficient to meet the requirements of Section 2 of Article XI of the Constitution; sixth, that the alleged agreement made by her while sole is not sufficient to meet the requirements of Section 2 of Article XI of the Constitution, and, seventh, that Section 2591 of the General Statutes is in conflict with Article XI of the Constitution.

Professional services were rendered by attorneys at law to a widow at her verbal and written request. She is possessed of a large estate, consisting of real and personal property, inherited from her husband, recently deceased. The right of the widow to the possession and enjoyment of the property was questioned by two brothers of her deceased husband, who claiming rights to the possession of the property as surviving partners of their deceased brother, commenced litigation against the widow to obtain possession of the property. It was in this litigation that the attorneys were employed by the widow. The litigation was difficult, the rights of the parties obscured by conflicting evidence in many phases of the case. Decrees were rendered against the widow, appeals were taken and the decrees reversed. The labor at last resulting in decrees in favor of the widow, who during the litigation and while the services of her attorneys were being performed in her behalf remarried. At no time before or during the employment of the attorneys was there any agreement between them and the widow,

or between them and the woman and her last husband as to the amount of compensation to be paid to the attorneys for their services in the cause.

We think that the employment of the complainants by the widow contemplated the continuation by them of their services to the end of the litigation. The contract was a valid one, entered into by persons fully capable of binding themselves by agreement. The remarriage of the widow did not terminate the agreement. Her promise was made when she was capable of binding herself by a contract. The relation of attorney and client was not changed by the woman's remarriage, nor by any act on her part or that of her husband annulling that relation. The services of the attorneys were rendered pursuant to the agreement made with the woman when she was unmarried. The attornys' right to compensation did not accrue until the completion of the service they agreed to render. By continuing their services after the remarriage of the widow they simply performed the duties on their part to be performed under the contract. When the suit was terminated the contract became executed on their part. They became entitled to their compensation under the contract, which was a valid one, not upon a *quantum meruit* upon an implied assumpsit for services performed. While the contract in this case fixes no definite sum to be paid as compensation to the attorneys, yet a reasonable sum would be presumed to have been contemplated by the parties. And the cause of action would be upon the express contract or promise to pay a reasonable compensation when the service was performed, not upon an implied assumpsit for the value of services rendered. No disturbing event occurred to discontinue the employment of the attorneys, such as death of the client or incapacity of the attorneys. There was no

desire on the client's part to dismiss her counsel, and we have found nothing in the books to indicate that the marriage of the woman *ipso facto* terminates the relation of attorney and client where the former has been employed and authorized to conduct specific litigation. The case is not analogous to that of principal and agent, where the principal, a *feme sole,* appoints an agent generally or specially to make contracts or convey lands. Her marriage destroying her capacity to enter into a contract or convey lands, she cannot do so by an agent. The relation therefore ceases. In the case of an attorney employed in specific litigation, the marriage of the principal does not destroy her power to enjoy the results of the litigation and services of her attorneys, which in this case was of material advantage to her private estate, which after marriage became her separate estate. We think, therefore, the obligation to pay a reasonable fee was an obligation incurred by the woman before her marriage payable upon the completion of the services by her attorneys.

This case therefore involves the obligation of an unmarried woman whose status since the obligation was assumed has been changed to that of a married woman. Her change of status does not destroy the obligation.

Section 2591, General Statutes of 1906, provides that the husband shall not be liable to pay the debts of the wife contracted before marriage, and that the *property* of the wife shall be subject to such debts. Prior to this Act the husband was liable to pay the debts so contracted. It was a burden cast upon him by the common law. See 1 Bishop on Law of Married Women, §58; 13 R. C. L. 1215. The statute frees him from such liability. All the considerations which existed at common

law for casting this burden upon him have been swept aside by the statute. It is profitless to discuss the reason for the law or the considerations which induced it. The legislature had power to deal with the subject. Whether it was enacted because of the policy decided upon to enable married women to hold as separate property such as they had at the time of marriage or might thereafter acquire, throws little or no light upon the question involved here.

The marriage of the woman did not discharge her from liability for the debts incurred by her. See 13 R. C. L. 1219. How that liability is to be enforced is the question to be determined. If the section of the General Statutes referred to creates a lien upon the separate estate of the woman in favor of any creditor of hers while she was sole whose claim was not paid before her marriage, the demurrer was properly overruled. But if no lien is created by the statute in favor of such a creditor, the bill contains no equity, because the obligation is merely one at law, a promise to pay a reasonable sum for services which were rendered. Under the common law, while the husband was liable for the ante-nuptial debts of his wife it was a joint liability with the wife, but of a temporary or qualified nature. Cole v. Shurtleff, 41 Vt. 311. They were required to be jointly sued in an action for the recovery of the debt. 1 Chitty's Pleading (16th Am. Ed.) 86. The woman was the real debtor. In the event of the death of the husband the debt survived against her. See Powers v. Southgate, 15 Vt. 471; 2 Kent's Com. 145; Reeves Domestic Relations, 53.

If a *feme sole* married pending a suit against her the marriage need not be noticed in the subsequent proceedings. It did not affect the form of the proceedings. The

suit proceeded as if no marriage had taken place. Roosevelt v. Dale, 2 Cowen (N. Y.) 581. But the common law rule required the husband to be joined in a suit brought, after the marriage of the woman, to recover upon a contract made by her *dum sola.* I Chitty's Pleading (16th Am. Ed.) 86. The reason for the rule was, that by marriage the wife was entirely deprived of the use and disposal of her property and could acquire none by her industry. If, therefore, the suit could be maintained against her alone, she might be imprisoned and would be wholly destitute of the means of extricating herself from confinement, depending solely on the good will of her husband to pay the debt and thus procure her release. Reeves Domestic Relations, 54.

At common law a married woman was not liable to be sued alone, her husband was joined for conformity. If the creditor recovered a judgment he could collect it out of the property of either. 2 Bishop on Married Women, §52; Woodman v. Chapman, 1 Lamp. 189. The husband was liable to be sued for her debts, but she was a necessary party; execution, however, went against him alone, and was satisfied either out of property which came to him from her at the marriage, or out of his own property. Our statute, Section 2591, General Statutes, 1906, the original Act having been passed in 1845, merely relieved the husband of liability as to his wife's debts contracted before marriage, and provided that the debts should be satisfied out of her property, not his. The language of the Act could mean reasonably nothing more than this. By enactment of the Legislature the property of the wife owned by her before marriage became her separate property, and was not liable for her husband's debts without her consent in writing. This feature of the common law was thus expressly changed by Act of

the Legislature and although the fact that the husband at common law took title to all the wife's personal property was not the sole reason for his liability for her antenutial debts, the Legislature saw fit to exempt him from liability therefor, doubtless because her property was thereafter to remain her own. The Act, however, did not relieve him of any other duty or obligation that might rest upon him by reason of the marital relation in the event suit should be brought to enforce payment of a debt of his wife contracted before marriage. There is nothing in the Act inconsistent with the idea that as at common law she was a debtor yet she and her husband should be joined in a suit to recover the debt, so under the Act she is still the debtor and in a suit to recover it she and her husband must be joined. The effect of the Act is merely to limit the lien of the judgment to the property constituting the wife's separate estate. We do not consider the Act as creating a specific lien upon the wife's separate property as security for an obligation incurred by her on a mere promise to pay, especially in cases where the debt is unliquidated. Nor do we think that the provisions of Article XI of the Constitution relating to the subjection of a married woman's property in equity for any money due on her writing made for the benefit of separate property apply.

The cause of action as disclosed by the bill is a mere common law obligation upon which action may be brought against the wife at law by joining the husband and in the event judgment is obtained the plaintiff shall be confined to the woman's separate property for satisfaction. All the incidents of such an action, such as ancillary attachment, etc., are available.

From the views expressed it follows that the court

erred in overruling the demurrer. So the order is reversed with directions to dismiss the bill.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.