KERMAN'S, a foreign corporation, and SPAULDING & COMPANY, a foreign corporation, *Appellants,* vs. MILDRED C. STROBHAR, *Appellee.*

143 So. 138.

En Banc.

Opinion filed July 12, 1932.
Petition for rehearing denied October 19, 1932.

D. R. Peacock, Geo. L. King, and Stewart & Ford, for Appellants;

W. B. Shelby Crichlow and Frank C. Pelot, for Appellee.

BROWN, J.—Appellee, Mildred C. Strobhar, formerly a resident of Kansas City, Mo., and W. P. Strobhar were married in Detroit, Mich., in June, 1925. Mr. Strobhar was a traveling representative of a large New York concern, but the record does not indicate that he had any permanent domicile until sometime in September, 1925, (the exact date not being given) when he and his wife, according to their testimony, went to Palmetto, Manatee County, Florida, with the intention of residing there, and Mrs. Strobhar some two months later purchased a home there, paying a considerable sum, $18,500.00, thereon in cash, and taking a deed to the property in her name, on Nov. 28, 1925. In the home so purchased she and her hus-

band resided up to the time of the filing of her bill in 1928, the purpose of which was to have two certain judgments which had been rendered against herself and husband held null and void as against her and removed as clouds on her title to the above mentioned property. From a decree granting her the relief prayed for in the said bill this appeal was taken by the two defendants, being the two foreign corporations in whose favor the judgments had been respectively entered.

On September 9th and 29th, 1925, Mr. and Mrs. Strobhar together visited the store of Kerman's, a corporation, in Chicago, Ill., and purchased certain articles of wearing apparel for Mrs. Strobhar, leaving an account due Kerman's of $350.00. On November 12th and 13th, 1925, they went to the store of Spaulding & Company, a corporation, in the same city, and purchased certain articles of jewelry, amounting to $9,195.50. These accounts were not paid, and in October, 1926, the Kerman's corporation recovered a judgment in the County Court of Manatee County, Florida, against Mr. and Mrs. Strobhar for $354.67 and costs, and in March, 1927, Spaulding & Company also recovered a judgment against them in the Circuit Court for Manatee County for $9,440.51 and costs. These two judgments were based upon the accounts created for the purchases above referred to. It appears that personal service of process was had upon each of the Strobhars in both actions; that they filed appearances therein, but interposed no defense and filed no pleadings in either action, and allowed judgment by default and final judgments to be entered against them in due course, without opposition, in both actions.

The bill filed by Mrs. Strobhar about a year later avers that said judgments are each void and of no effect, because based on accounts created subsequent to her marriage and that when the judgments were obtained she was a married

woman whose disabilities of coverture had not been removed, and that said judgments constituted clouds on her separate property which interfered with the sale and disposition thereof. The demurrer of the defending judgment holders to the bill as finally amended was overruled, and the defendants filed their joint and separate answers, alleging, among other things, that the contracts on which the judgments were based were made and payable in Illinois, where the complainant had full legal capacity to make such contracts and to bind herself personally therefor as if she were a femme sole and that she did, under the law of Illinois, become personally liable for the amount due under said contracts. A certified copy of the Illinois statute was introduced in evidence, which appears to sustain this allegation, and there was also evidence introduced as to the articles purchased and the sales prices. The answer further alleges that complainant has and still retains the consideration, fruits and advantages of such contracts, liability for which she now seeks to avoid. On final hearing, the chancellor rendered a decree in favor of the complainant, and granted the relief prayed for.

While our constitution and statutes have made some changes in the ancient common law principles respecting the disabilities of married women, the common law rule that a *femme covert* is not competent to enter into a contract so as to give a personal remedy against her, has been left undisturbed and in full force in this State (Lewis v. Yale, 4 Fla. 418; First Nat'l Bank v. Hirschkowitz, 46 Fla. 588, 35 So. 22; Blood v. Hunt, 97 Fla. 551, 121 So. 886 and cases cited), except as to married women who have been made free dealers pursuant to the statute, section 5024-8 C. G. L. We are not directly concerned in this case with the power of a married woman to make a valid mortgage or sale of her separate property, or

the power of courts of equity to charge the separate real or personal property of a married woman and sell the same for certain purposes, such as ''the purchase money thereof,'' or for ''the price of any property purchased by her,'' as provided in sections 1 and 2 of Art. XI of the Constitution, but one effect of our constitutional provisions and statutory enactments is that the contracts of married women, even when not enforceable against them personally, are not always wholly null and void. Nadal v. Webber, 70 Fla. 218, 70 So. 20; Frosen v. Cape, 88 Fla. 236, 102 So. 158.; Equitable B. & L. Asso. v. King, 48 Fla. 252, 37 So. 181; Sumner v. Osborne, 101 Fla. 742, 135 So. 513. Thus, this court has held that money paid to a married woman upon a contract for the purchase of real estate, not executed as required by the statute, where she refuses to perform the contract and convey the property and also refuses to return the money, may, by a court of equity, be required to be returned by her or decreed to be a lien on her property; that she cannot retain the money and refuse to perform the contract. Vance v. Jacksonville Realty & Mtg. Co., 69 Fla. 33, 67 So. 636; Wheeler v. Sullivan, 90 Fla. 711, 106 So. 876; Schmidt v. Kibbon, 100 Fla. 1684, 133 So. 194. Nor may a purchaser from a married woman breach the contract and charge the property in equity for a partial payment thereon in the absence of a showing that the married woman was unwilling or unable to complete the contract to convey. Shields v. Ensign, 68 Fla. 522, 67 So. 140. Likewise, when a married woman engages to purchase property upon a contract not enforceable against her personally, and pays to the vendor a part of the purchase money in cash, she cannot recover the money so paid in the absence of a showing that the vendor had failed, or refused, or was unable, to perform the contract on his part. Edgar v. Bacon, 97 Fla. 679, 122 So. 107. It was said in the last

cited case that "the protection which the law throws around married women, by making certain contracts unenforceable against them personlly, was intended to operate as a shield of defense and not as a sword of offense." To like effect, see Geitgey v. Traweek, 97 Fla. 905, 122 So. 512, wherein it was said: "The right of married women to acquire property in this State is as complete as that of their husbands. See Sec. 5866 C. G. L. 1927; Art XI of Constitution of Fla." And it is well settled that a married woman may be sued in an action at law for the breach of an antenuptial contract, by joining her husband as defendant. McGill v. Cockrell, 81 Fla. 463, 88•So. 269. Thus personal judgments can be obtained in this State in certain cases against married women, as where their disabilities of coverture have been removed, or, without that, where the action is for breach of an antenuptial contract. Hence the bill as last amended was subject to demurrer, because it did not show the nature of the claimed liability upon which the attempted judgments was based; *non constat* it may have been one upon which a personal judgment could lawfully have been rendered. However, this was harmless error here, as the answers and evidence of the defendants supplied this omission.

It was held by this court in Nadal v. Webber, supra, in a well considered opinion by MR JUSTICE ELLIS, that a married woman's disability of coverture was removed by section 2 of Art. XI of the constitution, to the extent that she may assume an obligation for the purchase price of property which may be enforced out of her separate property by suit in equity. That case involved the purchase of personal property—merchandise. While the constitution does not authorize a suit at law to recover personal judgment in such cases against a married woman, it does empower her to acquire—to purchase—both real and personal property, and to assume an obligation for

the purchase price which may be enforced in equity as against her separate property. So the obligation is recognized as existing, though the remedy for its enforcement is in equity. Thus it cannot be said that the laws and public policy of this State are contrary to the recognition of the existence of the validity of such an obligation. Therefore, when a married woman contracts such an obligation by purchasing personal property in another State, which recognizes not only the validity of such an obligation but also its enforceability against her personally by action at law, and such married woman is later sued thereon in an action at law in a court of competent jurisdiction in this State, and is duly and personally served with process, her husband being also made a party defendant and served with process, and she appears in the cause but fails to interpose any defense, she waives an objection to the form of remedy, and if she subsequently files a bill to cancel the judgment she has thus permitted to be rendered without objection, equity will not intervene in her behalf to set aside and annul the judgment thus rendered, merely on the ground of her coverture, when in her bill she neither denies the bona fides of the obligation, nor offers to return or pay for the property purchased. In Knott v. Smith, 79 Fla. 628, 84 So. 660, it was held that when a married woman, by virtue of her contract to convey her separate property, invalid because not acknowledged as required by statute, but for which she has received the consideration in whole or in part, comes into a court of equity to have her title relieved of such contract, she must in her bill of complaint offer to return the consideration received, or set up facts which would excuse her failure to do so. Those who come into equity must come with clean hands; those who seek equity must do equity. To hold otherwise would permit a married woman to use her coverture as an offensive, in-

stead of a defensive, weapon. A court of equity will not grant relief to a complainant who will not concede and provide for all equitable rights and claims justly belonging to the adverse party and growing out of or necessarily involved in the subject matter of the controversy. Tampa, etc., R. Co. v. Catts, 79 Fla. 235, 85 So. 365; Dale v. Jennings, 90 Fla. 234, 107 So. 175; 1 Pom. Eq. Juris., Sec. 397; 4 A. L. R. 73.

Indeed, it has been held in some jurisdictions that the plea of coverture is a personal defense, and can be pleaded only by a married woman or those in privity with her, and that a failure to plead it constitutes a waiver of such defense. 30 C. J. 1013-1014.

In an able opinion by MR. JUSTICE WHITFIELD in Conner v. Elliott, 79 Fla. 513, 85 So. 164, the generally prevailing doctrine was thus expressed: "The validity and interpretation of personal obligations executed and to be performed in one State will be governed by the laws of that State when sought to be enforced in the courts of another State."

See also Thomson v. Kyle, 39 Fla. 582, 23 So. 12; 13 R. C. L. 1242, 1250; 18 A. L. R. 1509, 1519, 1525, 1543, 1549, 1550; 30 C. J. 726 et seq.

In the case of Walling v. Christian & Croft Grocery Co., 41 Fla. 27 So. 46, this court said:

"Contracts by married women, valid under the laws where made though void under the laws of another domicile, have been enforced in the courts of the latter. Thus, a married woman resident in Kentucky was made a free dealer under the laws of that State and entered into a valid contract there; the courts of Tennessee enforced the contract against her though by the laws of the latter State her contract would be invalid. Robinson v. Queen, 87 Tenn. 445. See also, Milliken v. Pratt, 125 Mass. 374, S. C. 28 Am. Rep. 241; Hill v. Chase, 143 Mass. 129, 9 N. E. Rep. 30; Bell v. Packard, 69 Me. 105, S. C. 31 Am. Rep. 251;

Bowles v. Field, 78 Fed. Rep. 742. It was decided in Scudder v. Union National Bank, 91 U. S. 406, that matters bearing upon the execution, interpretation and validity of a contract are determined by the law of the place where it is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy depend upon the law of the place where the suit is brought. See, also, Ruhe v. Buck, 124 Mo. 178, 27 S. W. Rep. 412; Bank of Louisiana v. Williams, 46 Miss. 618, S. C. 12 Am. Rep. 319. After a thorough examination of the authorities, Story concludes as follows (Section 103, Conflict of laws): 'Hence we may deduce, as a corollary, that in regard to questions of minority or majority, competency or incompetency to marry, incapacities incident to coverture, guardianship, emancipation and other personal qualities and disabilities, the law of the domicile of birth, or the law of any other acquired and fixed domicile, is not generally to govern, but the *lex loci contractus aut actus,* the law of the place where the contract is made or the act done.' "

On this subject, the following comments appear in 5 R. C. L. 950-952:

"The just and normal rule as to the capacity of a married woman to contract is dictated by the lex loci contractus, and if her contract is valid by that law, then it should be enforced no matter where called in question. While authority may be found which abhors any law that will permit a married woman 'to dispose of or charge her property as she may desire and free from the restraint of her husband or the methods prescribed by the lex rei sitae,' the fact must be admitted that in these modern times the 'shield of coverture' is more often regarded as a cumbersome piece of armour handed down from the middle ages, and since it is designed primarily to protect the wearer against her own ignorance it is seldom worn nowadays with becoming and never with flattering grace. Hence the trend of the authorities on this point is with the times; and the better rule is that no public

policy is offended by contracts valid under the laws of another state, though they may be invalid if tested by the law of the forum. Of course, under some circumstances the lex solutionis will govern in respect to the capacity of a married woman to contract, especially when the contract is made with special reference to the laws of the place of performance; and in the case of contracts affecting real estate or the title therein, the lex rei sitae will be the test. Even when it is conceded that the capacity of a married woman is to be tested by the law of some place other than that of the forum, and that by the law of such place she had the requisite capacity, there may still be a difficulty in the way of enforcing the contract at the forum, either because the lex fori furnishes no remedy at all, or a remedy which is too broad or too restricted to protect the rights of the parties as fixed by the law of the place which determines the capacity of the married woman.''

While it is not contrary to the law and public policy of Florida for a married woman to acquire real and personal property and assume an obligation for the purchase price, this court has long been committed to the common-law doctrine that the mere promissory note of a married woman is void and affords no basis for a common-law suit. Hodges v. Price, 18 Fla. 342; Virginia-Carolina Chemical Co. v. Fisher, 58 Fla. 377, 50 So. 504; Lloyd v. Cooper Corporation, 134 So. 562, 101 Fla. 533; Lloyd et al. vs. Cooper Corporation, 134 So. 563, 101 Fla. 532. In the last cited case, it was held that a judgment against a married woman on a note was not enforceable in this State, and the execution of such judgment could be enjoined. In the other cited case of Lloyd v. Cooper Corporation, it was held in effect that a promissory note executed by a married woman and her husband in the State of Ohio may not be enforced in Florida, it being contrary to the law and public policy of this State, where a married woman's notes are void and unenforceable in a

common law suit. It appears from the record in that case that while the note was executed in Ohio, the married woman executing it was domiciled in this State. The case cited to support this holding was Union Trust Co. vs. Grosman, 245 U. S. 412, 38 S. C. 147, 62 Law. ed. 368. These cases, holding a married woman's promissory note void and unenforceable in a law action in this State are not in conflict with the holding in this case; nor is the holding here in conflict with Garvin v. Watkins, 29 Fla. 151, 10 So. 818, and Rice v. Cummings, 51 Fla. 535, 40 So. 889, as a careful reading of those cases will show. Cumbersome as may be the armor afforded married women by the common law disabilities of coverture, in the light of modern conditions, it is for the legislature, and not for the courts, to repeal or modify them. The courts must continue to enforce them except in so far as they have been obliterated or modified by our constitution and statutes, for to that extent the common law is in force in this State by express legislative enactment. But, as above pointed out, our previous decisions have clearly recognized that our constitution and statutes give a femme covert the right and authority to acquire real or personal property and to assume an obligation for the purchase price thereof. Thus it cannot be said that it is contrary to the public policy of this State to give effect to and enforce an obligation for the purchase price of personal property, purchased by a married woman, made and payable in a State where she was legally liable therefor, and where it was enforceable against her personally. True it is, that the lex fori generally determines the nature of the remedy (13 R. C. L. 1250), but as pointed out above, our laws recognize the liability of married women to be sued in actions at law in certain cases, where they are personally liable, such as suits on antenuptial contracts, and for damages founded upon pure torts, and on obligations incurred

after the removal of disabilities under the statute. And where, as here, the judgments attacked were founded upon obligations lawfully incurred for the purchase of property in another State, upon which a judgment at law could be obtained against her in that State, such purchase of property and an obligation to pay for it being not contrary to the public policy of this State, and such married woman, though lawfully brought into our court, and though appearing in the cause, having made no objection to the form of the remedy, and having interposed no defense, and having made no motion in the court rendering the judgments to arrest or vacate them, and having taken no steps for appellate review, surely such judgments were not null and void, nor subject to collateral attack. As was said in 13 R. C. L. 1251, where the court recognizes the contract made in such other State as valid, some remedy should be given, and one that is adequate, ''that is, the one applicable in cases of similar contracts between persons not under disabilities, when necessary to afford adequate relief.'' Whether, if appellee had seen fit to object in some appropriate method to being sued in these actions at law, rather than by bill in equity to charge her separate property, such objection or plea should have been sustained, it is not necessary for us here to decide; but we are clearly of the opinion that she could not, a year later, in a suit to remove clouds from the title of her real estate, ask a court of equity to declare such judgments null and void, based as they were upon obligations incurred in the purchase of personal property in Illinois, without offering to return the property or pay for the same.

The final decree appealed from must therefore be reversed.

Reversed and remanded with directions to dismiss the bill.

160

WHITFIELD, TERRELL AND DAVIS, J.J., concur.
BUFORD, C.J., AND ELLIS, J., dissent.

## ON PETITION FOR REHEARING.

PER CURIAM.—On petition for rehearing, it is considered, ordered, and adjudged by the court that the concluding sentence of the former opinion and judgment of this court filed July 12, 1932, be amended and changed so as to read as follows: "Reversed and remanded, with leave to the chancellor to allow such amendments of pleadings and the taking of such additional testimony as the ends of law and justice may require in this cause, not inconsistent with the principles of law enunciated in said opinion of the court heretofore filed."

It is further ordered that the petition for rehearing be and the same is hereby denied.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.