# Smith v. Franklin

*David J. Smyth,* for plaintiff; *Saul, Ewing, Remick & Saul,* for defendant.

SMITH, P. J., November 3, 1933.—This matter arises upon motions for new trial and for judgment n. o. v. In an action in assumpsit, the jury rendered a verdict in favor of the plaintiff in the sum of $3,750.

In 1927, the defendant, a married woman, went from Pennsylvania to Florida, and in Palm Beach leased an apartment from the plaintiff. In the latter part of 1928, she expressed a desire that her apartment be enlarged. The plaintiff orally agreed to construct an annex to the apartment on a parcel of land next to and adjacent to the land on which the apartment was erected, at an agreed price of $7,500, for which expense the defendant orally agreed to reimburse the plaintiff over a period of 5 years, in 10 semiannual installments of $750 each, with interest at 6 percent, from January 1, 1929. The payments to be made were evidenced by 10 promissory notes signed by the defendant. The annex was built by the plaintiff, and the defendant obtained the right, by a lease, to use and occupy the said annex free of rent for 5 years, or for such longer time as she continued as a tenant of the original apartment. The defendant paid five of the said promissory notes, but refused to pay the remaining five notes, advancing as a reason therefor that, under the laws of Florida, as a married woman she was not legally liable for this obligation.

Section 1 of article XI of the Constitution of Florida adopted in the year 1885 provides as follows:

"Married Women's Property.

"Section 1: All property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterward by gift, devise, bequest, descent, or

purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing executed according to the law respecting conveyances by married women."

Section 2 of article XI of the said Constitution of Florida adopted in 1885 provides as follows:

"Section 2: A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent."

These provisions of the Constitution of Florida are a modification of the common law of England, which is in effect in Florida, insofar as they remove certain limitations on the restrictions of a married woman. Section 2 of article XI, as aforesaid, is written in language that is lucid and understandable in stating the exceptions to the common-law restriction.

In Micou et al. v. McDonald, 55 Fla. 776-780 (1908), it is stated:

"(1) It enables her to purchase property either real or personal and to obligate herself for the purchase price thereof.

(2) It enables her by an *agreement in writing made by her* to obligate herself for the payment of money or thing of value when the same enures to the benefit of her separate property.

(3) It enables her to obligate herself for the price of any labor or material used with her knowledge or consent in the construction of buildings, repairs or improvements upon her property, or for agricultural or other labor bestowed thereon with her knowledge and consent."

It has been held in Florida that a married woman has the right to acquire property by purchase. A leasehold is property, and this leasehold interest is such property as may become a part of the separate estate of this defendant married woman in the State of Florida under the provisions of the Constitution of 1885. Section 1 of article XI specifies how the separate property of a married woman may be acquired.

In Hackett v. Emporium Borough School Dist., 150 Pa. 220, 226, Mr. Justice Williams said: "The legal meaning of the word purchase includes all modes of acquisition except that by descent. A lessee is. a purchaser as truly as he who becomes grantee in fee. The difference is in the estate acquired. The estate of the former is a leasehold, of the latter a freehold, but the mode of acquisition is by purchase in both cases."

The defendant by her actions in making a lease with the plaintiff has acquired this personal property by purchase.

In Halle et al. v. Einstein, 34 Fla. 589, 604, 16 So. 554, 559, Mabry, J., said: "Considering the entire section, we think it must be construed to mean that the married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestered for the price of any property purchased by her. The purchase of any property by her augments that much, of course, her separate property, and inasmuch as she is given the right to acquire property by gift, devise, bequest, descent, or purchase, free from the debts of her husband, a corresponding liability is imposed upon her separate property for the payment of the price of any property purchased by her. This seems to us to be the intention of the convention, and hence the only

proper construction to be placed upon the article in question, and to this extent it is only necessary to go here to dispose of the case before us."

The leasehold on the property of the plaintiff possessed by the defendant was the defendant's separate property, and she was obligated for the price of the construction and improvements made on this property. The interest of a tenant in a term of years is deemed at common law personal property as distinguished from real estate: 16 R. C. L. 536.

In the State of Pennsylvania, a leasehold has been held to be personal property: See Townsend v. Boyd, 217 Pa. 386; Dalzell v. Lynch, 4 W. & S. 255.

One of the contentions of the defendant is that the construction was made on a parcel of land adjacent to the property leased by the defendant, and not on a part of the leased property itself, and that the question of whether a lease is or is not property is not at issue.

The lease made January 17, 1929, for the so-called "annex", by the plaintiff as lessor and the defendant as lessee, contemplated and included the so-called "annex" to the apartment originally leased by the defendant under the lease of 1927. It was referred to as "new addition of two master bedrooms and patio in rear of apartment house 325 Chilian Avenue, Palm Beach." The original lease of 1927 between the parties covered the lower apartment of that apartment house situate 325 Chilian Avenue, and it was one and the same structure after the addition was made to the original apartment house. The original lease held by this defendant on the apartment house to which the additions and improvements were made is therefore the personal property of the defendant.

The first line of section 2 of article XI of the Constitution of 1885 provides: "A married woman's separate real or personal property may be charged in equity and sold" . . . (and then in the latter part of that section is continued) ". . . for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property," etc., etc.

Thus, while the remedy for the enforcement of this contract is fixed in equity, there is an obligation upon her part to pay for the labor and materials used with her knowledge in the improvements made upon her property. We cannot accept the narrow construction advanced by the defendant that, since the improvement of the annex was laterally attached to the original apartment house, the improvement could not be considered as having been made upon the defendant's property. Webster's New International Dictionary gives as the definition of "upon", as an adverb: "on; hereupon; thereon." In a definition of the preposition "upon" the following sentence is cited: "He made a great difference between people who did rebel *upon* wantonness, and them that did rebel *upon* want." It becomes apparent that "against" may be included within the scope of the meaning of "upon" in the sense of this section. This would bring the improvement made on the original apartment within the meaning of article XI, section 2 of the Constitution.

Another contention advanced by the defendant is that, even if the old building held by a lease and the new construction attached thereto may be considered as one, the plaintiff, under the laws of Florida, is restricted in her remedy in equity against the leasehold interest of the defendant alone and not against her separate property generally. It is true that the remedy existing in the State of Florida provides that the defendant's separate real or personal property may be charged in equity and sold.

In considering the forum where the remedy attempted to be enforced in one State varies from that provided for in the State in which the contract was made, we must, as is written in Minor's Conflict of Laws, 439, ". . . examine whether

the legislature of the State whose law governs the obligation of the contract could, by enactment *subsequent* to the execution of the contract, make applicable to it a law similar to that sought to be enforced in the forum. If such a retrospective law passed in the proper situs of the contract would not impair its obligation nor violate the provision of the constitution, the matter must be held to relate not to the obligation but to the remedy, and the lex fori will prevail. But if such a retroactive law as the lex fori, passed in the situs of the contract, would be unconstitutional as impairing its obligation, the same law in the forum cannot be held to apply, the question being one of obligation, not of remedy."

Matters of substance are determined as matters of right, and methods of procedure as matters of remedy.

Under the laws of Pennsylvania, a married woman may be sued in law for causes growing out of her personal contracts. The defendant may not insist that she must be sued in Pennsylvania under the remedial forms of the State of Florida. The right of action against her originated in that State, but the process of machinery providing for the remedy sought is bound by the laws of Pennsylvania. The matters of procedure include determination of the question whether the action is at law or in equity, whether it be in assumpsit, covenant, or debt: Burchard v. Dunbar, 82 Ill. 450; Robinson v. Queen, 87 Tenn. 445; The Collins Iron Co. v. Burkam, 10 Mich. 283.

In 2 Wharton, Conflict of Laws, 1489, § 747, there is written: "No matter what may be the law to which a case may be subject, the *lex fori*, as has been seen, must decide as to the form of the suit in which such case is to be presented."

In Blood et ux. v. Hunt et ux., 97 Fla. 551, 121 So. 886, there is a clear exposition of the limitations of a married woman under the common law of the State of Florida. Then follows a statement of the exceptions to these limitations as provided in the territorial enactments of 1835, 1845, the Constitutions of 1868 and 1885, and the compiled general laws of 1927, secs. 5024-5028. Whitfield, P. J., at page 559, in that case said: "The organic section authorizes the separate property of a married woman to be charged in equity and sold, or the uses, rents and profits thereof to be sequestrated, for the payment of amounts due by her in any one of the five specified classes of cases, each class being definitely stated in the section of the Constitution."

And at page 570:

"Section 2, Article XI provides for five distinct classes of cases in which a married woman's separate property may be charged for debts incurred by her. The remedy afforded by the section will ordinarily operate upon each case as coming within one and only one of the enumerated classes of cases. If a case more properly comes within one of the specified classes of cases, the remedy appropriate to that class only should be invoked. See Citizens Bank & Trust Co. v. Smith, [97 Fla. 601, 121 So. 900] filed this day."

And at page 575: "Sec. 2, Art. XI, of the Constitution of 1885 affords a remedy in classes of cases formerly remediable in equity though not by virtue of any statute, and the section also apparently gives a remedy in classes of cases not theretofore covered by equitable remedies applied in this State.

"The organic provision recognizes the existence in this State of separate property of a married woman under the then existing statutes and specifically provides for subjecting in equity the separate property of a married woman for amounts due by her in classes of cases that are definitely enumerated in the organic section."

In that opinion, the term "organic law" does not mean substantive law, but it means the law as provided in the Constitution: see 36 C. J. 961, sec. 13.

In Kerman's et al. v. Strobhar, 106 Fla. 148, 153, 143 So. 138, 140 (1932), Brown, J., said: "It was held by this court in Nadal v. Webber, supra [70 Fla. 218], in a well considered opinion by MR. JUSTICE ELLIS, that a married woman's disability of coverture was removed by section 2 of Art. XI of the constitution, to the extent that she may assume an obligation for the purchase price of property which may be enforced out of her separate property by suit in equity. That case involved the purchase of personal property—merchandise. While the constitution does not authorize a suit at law to recover personal judgment in such cases against a married woman, it does empower her to acquire—to purchase—both real and personal property, and to assume an obligation for the purchase price which may be enforced in equity as against her separate property. So the obligation is recognized as existing, though the remedy for its enforcement is in equity. Thus it cannot be said that the laws and public policy of this State are contrary to the recognition of the existence of the validity of such an obligation."

In 13 R. C. L. 1250, sec. 287, it is said: "As regards the enforcement of a married woman's contract made in another jurisdiction, it is said to be the general rule that the lex fori determines the nature of the remedy. Thus where a contract was entered into in a state in which there is no distinction between courts of law and courts of equity, and the married woman could have been there sued in a court of law, it has been held that the contract may be enforced in the state of the forum only in a court of equity, as in case of a similar character of contract entered into in such state by a married woman."

In The New York Life Ins. Co. v. Aitkin, Exec., 125 N. Y. 660, 671, 672, Earl, J., stated: "But the defendant makes the further claim that according to New Jersey law his liability upon this assumption clause could, in any event, be enforced only in an equitable action, and possibly in an action to foreclose a mortgage to which he had in some way been made a proper party. But it is matter of mere form, not of substance, and relates to procedure; and the procedure in an action in this state must be governed by the laws of this state; and by our law an action at law may be maintained upon such a covenant."

Generally speaking, the laws of another State are matters of fact, and where a foreign statute is relevant to the issue it must be proven as any other fact. This evidence of course is for the information of the court, and when presented it is the duty of the court to give the jury instructions with reference to it. The evidence must be the best available. If the case turns upon the interpretation of a statute of a foreign State, that statute should be introduced in evidence. And where the interpretation of the statute laws is presented by witnesses learned in the law of the State, and the evidence is in conflict, it becomes a question for the jury to determine which version they care to take, under proper instructions from the court.

As was said by Mr. Justice Gray in Hanley et al. v. Donoghue, 116 U. S. 1, 4: "No court is to be charged with the knowledge of foreign laws; but they are well understood to be facts, which must, like other facts, be proved before they can be received in a court of justice."

In Story, Conflict of Laws, sec. (8th ed.) 638, it is said (footnote p. 869): "When the evidence consists of the parol testimony of experts as to the existence or prevailing construction of a statute, or as to any point of unwritten law, the jury must determine what the foreign law is, as in the case of any controverted fact depending upon like testimony." See also 5 Wigmore on Evidence (2d ed.), sec. 2558.

The trial judge in this case, after a most careful and comprehensive charge, left the question of the conflicting testimony of the experts to the jury, with proper instructions. No material error was made in this charge.

In Bayuk Bros. Inc. v. Wilson Martin Co., 81 Pa. Superior Ct. 195, 197, it is said: "Judgments are not, however, to be reversed in all cases in which the court has made a mistake of law; the errors which are fatal to a judgment are such only as may reasonably be held to have worked injury to the cause of the party."

A study of this entire case is convincing that a legal right to sue upon the contract in question existed under the laws of Florida, and the obligation there made still exists. It is true that the remedy provided by the Constitution of 1885 compels an action in equity, but the cause of action is here commenced in Pennsylvania, and the plaintiff was not restricted to the action provided for under the laws of Florida. Pennsylvania has provided another remedy, and the plaintiff has availed herself of that remedy. There was ample evidence upon which the jury could have based its verdict, and therefore there is no reason for a new trial. The case is singularly free from error. Whatever errors may have existed are not of a material nature and in no way affected the verdict.

The defendant's motion for a new trial is dismissed and rule for judgment n. o. v. is discharged.